**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**TERESA RENEE FREEMAN,**

   **Plaintiff,**

**v.**                                    **Civil Action No. 2:12-cv-05451**

**MICHAEL J. ASTRUE[1],
COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for supplemental security income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f.  Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 14).  Both parties have consented to a decision by the United States Magistrate Judge.

Claimant, Teresa Renee Freeman, filed an application for Social Security Income benefits February 3, 2009, alleging disability beginning February 3, 2009.  Claimant alleges disability due to the following medical conditions: "head fracture, loss of right eye and mental issues" (Tr. at 140).  The claims were denied initially on September 14, 2009, and upon reconsideration on December 18, 2009.  Thereafter, Claimant filed a written request for hearing on January 20, 2010.  Claimant appeared at an administrative hearing held by an Administrative Law Judge on September 9, 2010, in

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 2 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

Charleston, West Virginia.  A decision denying the claims was issued on October 21, 2010.  Claimant's request for review by the Appeals Council was denied on July 19, 2012.  Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2012).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain*

2

*v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2012).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date (Tr. at 11).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of blindness in her right eye, gastroenteritis; gastroesphageal reflux disease; lumbago; cervical strain; hypertension; cognitive disorder, NOS; depression; and personality disorder, NOS. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 13).  The ALJ then found that Claimant has a residual functional capacity (RFC) for limited light work, reduced by nonexertional limitations[2] (Tr. at 14).  The ALJ found that Claimant has no relevant past work amounting to significant gainful activity (Tr. at 18).  The ALJ concluded that Claimant

---

[2] Claimant can never be exposed to climbing of ladders, ropes and scaffolds, hazardous machinery, unprotected heights or operational control of moving machinery; all other postural activities would be no more than occasional, that is climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; she would need to avoid concentrated exposure to extreme cold, excessive vibrations and excessive noise; she only has the use of one eye so there are limitations in depth perception and a limited field of visions, which excludes driving as she also does not have a driver's license; based on no work history and some cognitive problems she is limited to simple and routine and repetitive unskilled tasks and she needs a low stress job which is defined as no more than occasional decision making or changes in the work setting; she can tolerate no more than occasional interaction with the public (Tr. at 14).

could perform limited light exertional jobs such as mail room clerk, hand packer and file clerk.  On this basis, benefits were denied (Tr. at 19).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on March 17, 1965.  Claimant completed the eleventh grade in 1982 (Tr. at 30).  Claimant did not attend special education classes (Tr. at 31, 146). Claimant has four daughters.  Claimant and youngest daughter live with Claimant's mother.  In a disability report, Claimant stated that her illnesses began to interfere with

her ability to work on February 5, 2001[3] (Tr. at 140).  Claimant reported to being fired due to missing too much work.  (*Id.*)  Claimant reported that she stopped working because "It was to[o] hard for [her] to keep a job."  Claimant reported to working in fast food, at food preparation plants and for a maid service (Tr. at 141, 698-699).

Claimant's treatment records demonstrate that on February 5, 2001, Claimant was treated at Meridia Huron Hosptial in Cleveland, Ohio, where she reported that she was carjacked and assaulted.  Claimant was brought to the hospital in an ambulance.  Claimant reported that she was hit in the head multiple times with a shot gun.  Claimant was found in the trunk of her car (Tr. at 218).  Claimant denied sexual assault in the Emergency Room.  (*Id.*)

On March 8, 2007, Claimant was seen by MetroHealth Medical Center in Cleveland, Ohio, due to complaints of low back pain and a headache (Tr. at 244-246).  Notes from treatment at MetroHealth Medical Center state that Claimant "was demanding IV narcotics," asserting that the Medical Center was not controlling her pain (Tr. at 246).  The notes state that Claimant "has a long standing [history of] oxycontin use for chronic low back pain."

On August 25, 2009, Elizabeth Durham, M.A., performed a Neuropsychological Screening Profile for the West Virginia Disability Determination Service (Tr. at 697-701).   Ms. Durham reported Claimant's social functioning to be within normal limits.  Claimant reported her disability onset date and work interference date to be "one year ago" (Tr. at 698).  Claimant reported a disability date of "five years ago."  It is unclear what Claimant is referring to as a disability date as opposed to an onset date.  Neither

---

[3] Claimant reports her last day of work as February 5, 2001.  However, Claimant is alleging disability beginning February 3, 2009.

Claimant's alleged onset date of one year ago or disability date of five years ago coincide with her application asserting disability as of February 3, 2009.[4]  Claimant reported that she was not receiving mental health treatment.  Claimant testified that she went to Prestera twice but didn't go back due to alleged issues with the doctors (Tr. at 35).

Claimant denied drinking alcohol or using drugs.  She denied history of substance use, treatment for abuse and arrests for driving under the influence and public intoxication (Tr. at 698).  Claimant admitted to being arrested once for petty theft (Tr. at 699).  Claimant denied having any learning disability. Claimant reported to being fired from Hardee's and Mighty Maids for missing too much work (Tr. at 698-699).  Upon Mental Status Examination, Ms. Durham found Claimant's immediate and recent memories, concentration and psychomotor behavior to be normal (Tr. at 699).  Ms. Dunham reported Claimant's recent memory to be mildly deficient.  Claimant's Intellectual Assessment reflected a Verbal IQ of 83; Performance IQ of 77 and Full Scale IQ of 78.  Ms. Dunham reported Claimant's prognosis to be fair (Tr. at 700).  Ms. Dunham reported Claimant as interacting appropriately during the examination.  Ms. Dunham found Claimant's social functioning to be within normal limits.  Claimant's persistence and pace were within normal limits (Tr. at 701).  Ms. Dunham reported that if disability benefits are granted, Claimant is capable of managing finances.

On August 27, 2009, A. Rafael Gomez, M.D., conducted a Physical Residual Functional Capacity assessment of Claimant (Tr. at 703-710).  Dr. Gomez assessed Claimant as able to perform reduced light work with postural limitations (Tr. at 708).  On September 12, 2009, Holly Cloonan, Ph.D., performed a psychiatric review of

---

[4] A year prior to Ms. Durham's State agency consultation would have been approximately August 2008, and five years prior would have been approximately August 2004.  Both alleged dates occur before Claimant's application date of February 3, 2009, alleging disability on February 3, 2009.

claimant.  Dr. Cloonan reported that Claimant demonstrated a medically determinable impairment that did not precisely satisfy the diagnostic criteria for Listings 12.02 (Organic Mental Disorders) and 12.04 (Affective Disorders) (Tr. at 711-712).   Dr. Cloonan rated Claimant's functional limitations of activities of daily living, social functioning as mild.  Claimant did not experience any episodes of decompensation.  Dr. Cloonan reported Claimant's degree of functional limitation as moderate (Tr. at 721). Dr. Cloonan concluded that Claimant is able to learn and perform uncomplicated work-like activities in a setting with few distractions (Tr. at 727).

On December 14, 2009, Joseph A. Shaver, Ph.D., conducted a psychiatric review of Claimant (Tr. at 741-757).  Dr. Shaver rated Claimant's functional limitations in activities of daily living, social functioning and concentration, persistence or pace as moderate (Tr. at 751).  Claimant was reported to have experienced one or two episodes of decompensation.  Dr. Shaver concluded that Claimant retains the mental capacity to operate in routine, low pressure, work-like situations that require only two or three step operations, limited social interaction and minimal production quotas (Tr. at 757).

On July 23, 2010, after Claimant had filed a written request for an administrative hearing on her disability claim, Sheila Kelly, M.A., completed a psychological evaluation of Claimant (Tr. at 798-807).  Ms. Kelly's evaluation reported that Claimant had been unemployed for over 10 years (Tr. at 799).  Claimant reported the longest she had ever held a job was for three or four months with Mighty Maids (Tr. at 799).  Claimant reported that she last worked for Mighty Maids approximately 12 years prior.  Claimant believed the carjacking incident occurred in 2000. (*Id.*)  Claimant reported to Ms. Kelly that when she was carjacked, the perpetrator forced her to have oral sex, hit her in the head with a shotgun and locked her in the trunk of her car.  Claimant reported that a

7

police officer found her in the trunk of the car after the perpetrator was pulled over for running a red light. Claimant reported to Ms. Kelly that a few years after the carjacking, she was assaulted by a boyfriend who dragged her down some stairs and broke her jaw. (*Id.*)

Ms. Kelly reported that "Although, [Claimant] denies any history of alcohol or drug use, her medical records are fairly clear in indicating that several times she ended up in the emergency room either drunk or seeking medications, whether legitimately or illegitimately. Ms. Kelly reported to reviewing medical records that labeled Claimant as "drug seeking" (Tr. at 800). Ms. Kelly stated that Claimant "seems to use the emergency room for the provision of primary care." Claimant reported to taking two Lortab per day and frequently running out before the end of the month. Claimant stated that at times "she ends up in withdrawal once her Lortab is exhausted" (Tr. at 802). Ms. Kelly administered an intellectual assessment and reported Claimant's scores as a Verbal IQ of 73, Performance IQ of 69 and a Full IQ of 69 (Tr. at 804). Ms. Kelly noted that Claimant's "scores are rather markedly lower than those obtained by Elizabeth Durham in September of 2009" (Tr. at 804-805). Further, Ms. Kelly stated that Claimant's "test effort tended to be a little inconsistent" (Tr. at 805). Ms. Kelly reported that "[Claimant] has a history of some episodic alcohol abuse, opioid seeking behavior, multiple emergency room trips and very poor judgment. Although she states that these issues developed after a carjacking in 2000 with significant beating, she had issues even prior to the carjacking" (Tr. at 805-806).

Ms. Kelly reported that Claimant's driver's license was suspended but Claimant could not recall why (Tr. at 806). Ms. Kelly stated that Claimant "has never consistently been employed for any substantial length of time. Typically she simply doesn't come to

work or I suspect, is terminated."   Ms. Kelly noted that Claimant stormed out of her last appointment at the Prestera Center and that she suspected Claimant "may have some issues of opiod dependence and episodic alcohol abuse although she denies this and medical records are unclear" (Tr. at 806-807).  Ms. Kelly concluded that Claimant "may need some assistance in managing her financial affairs should she be determined to be disabled" (Tr. at 807).

Ms. Kelly completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form at the request of Claimant's counsel (Tr. at 808-811).  Ms. Kelly reported Claimant to have marked limitations in understanding and remembering detailed instructions; carrying out detailed instructions; performing activities within a schedule; maintaining regular attendance and being punctual; performing at a consistent pace; interacting appropriately with the public; and accepting instructions and responding appropriately to criticism from supervisors (Tr. at 808-809).  Ms. Kelly did not complete the sections of the form asking "What medical/clinical finding(s) support this assessment?" (Tr. at 808-810).

Claimant asserts the ALJ failed to accord adequate weight to the opinion of Sheila Kelly, M.A..  Claimant argues the decision is not based on substantial evidence, claiming the ALJ failed to consider all of her limitations in the Residual Functional Capacity form (hereinafter RFC).  Claimant asserts the ALJ failed to follow the analysis under 20 C.F.R. § 416.935 in considering the effects of alcohol and drug abuse on a finding of disability.

Defendant asserts that substantial evidence supports the ALJ's decision to afford the opinion of Ms. Kelly, little weight.  Defendant asserts the ALJ adequately accounted for Claimant's assessed limitations in the RFC assessment.  Defendant asserts the ALJ

did not assess the materiality of Claimant's drug abuse because he found Claimant's mental and physical impairments not to be a disability.

<u>Evaluating Mental Impairments</u>

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2012). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in

severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012).  The ALJ incorporates the findings derived from the analysis in his decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.08 (Personality Disorders) requirements (Tr. at 13). *See*, 20 C.F.R. 404 Subpart P, Appendix 1.  To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked restriction in activities of daily living;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme.  The ALJ assessed Claimant's functional limitations due to mental impairments by reviewing the Claimant's reports and the reports of others.  The ALJ also considered the State agency opinions.  The ALJ concluded that although Claimant suffers from some functional limitations form mental impairments, the mental impairments are not overly restrictive (Tr. at 13).

The ALJ held that Claimant did not experience any marked limitations in functioning (Tr. at 14).   The ALJ held that Claimant's activities of daily living were mildly restricted.   Her social functioning and concentration, persistence and pace were moderately restricted.    She did not experience any episodes of decompensation. Because Claimant's mental impairments did not cause at least two "marked" limitations, the ALJ found that her mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.02, 12.04 and 12.08 (Tr. at 13). The ALJ relied on the opinions of psychological consultant, Ms. Dunham, and the two state agency psychologists, Dr. Shaver and Dr. Cloonan (Tr. at 17).   The ALJ included specific restrictions to account for Claimant's limitations for work (Tr. at 14).   Included in the restrictions were limitations for Claimant's mental limitations.

<u>Credibility Determination</u>

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence.   "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision."   *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).   The ALJ's "decisions should refer specifically to the evidence in forming the ALJ's conclusion.   This duty of explanation is always an important aspect of the administrative charge . . . ."   *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent

they are inconsistent with the residual functional capacity assessment (Tr. at 15). The ALJ found Claimant's credibility to be "fairly poor." (*Id.*)   In coming to this conclusion, the ALJ considered Claimant's reports and reports by others.   Claimant reported to taking Lortab as prescribed for headaches.   Claimant testified that she has never used illegal drugs and she has never used cocaine. However, on February 5, 2001, Claimant's urine drug screen tested positive for benzodiazepine, cocaine and opiates (Tr. at 228). On July 8, 2009, Claimant's urine drug screen tested positive for alcohol, cocaine and benzodiazepines (Tr. at 545-546).

Substance Abuse

If a Claimant is found disabled and has medical evidence of drug addiction or alcoholism, a determination will be made whether the drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. § 416.935.  The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether Claimant would still be found disabled if he/she stopped using drugs or alcohol.  As the ALJ held that Claimant was not disabled, a determination of drug addiction or alcoholism was not warranted.

Vocational Expert's Testimony

At the administrative hearing, the ALJ asked the Vocational Expert (hereinafter VE) if jobs existed in significant numbers in the national economy that someone with Claimant's age, education, past relevant work and RFC, as stated above, could perform (Tr. at 48-56).  VE Casey Vass testified that such a person could perform light jobs including mail room clerk, hand packer and file clerk (Tr. at 49).  Based on VE Vass' testimony, the ALJ ruled that Claimant could perform work in the national economy, and therefore, she was not disabled under the Act (Tr. at 18-20).  Pursuant to SSR 00-

4p[5], VE Vass' testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

The ALJ's decision was issued on October 21, 2010.  The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Substantial evidence supports the determination of the ALJ.  The ALJ appropriately weighed the evidence of record in its entirety to determine that Claimant failed to demonstrate that she was unable to perform any substantial gainful activity.  The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2012).  Accordingly, the ALJ denied Claimant's applications for SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter:  March 31, 2014.**

Dwane L. Tinsley
United States Magistrate Judge

[5] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.